IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GINA GAYLE BIGELOW,          )
                                 )
        Plaintiff,           )
                                 )
      v.                    )     CIVIL ACTION NO. 1:14cv149-WKW
                                 )
CAROLYN W. COLVIN,         )
Acting Commissioner of Social Security,   )
                                 )
        Defendant.      )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Gina Gayle Bigelow ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act") and supplemental security income under Title XVI of the Act. Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir. 1993); *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable

person would accept as adequate to support a conclusion." *Cornelius,* 936 F.2d at 1145. A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis,* 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius,* 936 F.2d at 1145-46.

## BACKGROUND

Plaintiff filed her application for disability benefits on April 5, 2012, alleging that she became disabled on March 15, 2012, due to epilepsy, bipolar disorder, and "other mental problems" (R. 166, 224). Her application was denied at the initial administrative level, and plaintiff requested a hearing before an administrative law judge (ALJ). (R. 81). The ALJ held a hearing on February 8, 2013, at which plaintiff was represented by counsel. (R. 27-59). On April 30, 2013, the ALJ issued a decision finding plaintiff has not been disabled as defined in the Social Security Act since March 15, 2012, through the date of the ALJ's decision. (R. 7, 10). The ALJ followed the five-step evaluation for determining disability

benefits and concluded that Plaintiff had severe impairments of seizure disorder, bipolar disorder, panic disorder, personality disorder, and social phobia. (R. 12); 20 C.F.R. § 404.1520(a)(4). He concluded at step three that none of Plaintiff's impairments or combination of impairments met or medically equaled one of the listings. (R. 12). The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with nonexertional limitations. (R. 14). At step four, the ALJ determined that Plaintiff could not perform her past relevant work as a cashier/checker. (R. 20). The ALJ found that transferability of job skills was not material because the medical-vocational rules supported a finding that Plaintiff was not disabled. (R. 20). The ALJ concluded at step five that Plaintiff's ability to work at all exertional levels was compromised by nonexertional limitations, but Plaintiff could transfer her past work skills to the occupations of cleaner/housekeeper, poultry eviscerator, and production assembler. (R. 21). With the additional limitation that Plaintiff could not have contact with the public, the ALJ determined that Plaintiff could transfer her past work skills to the job of baker worker. (R. 21).

Plaintiff appealed the ALJ's decision to the Appeals Council, and on December 30, 2013, the Appeals Council denied review. (R. 1-9). Plaintiff then filed the present action seeking review of the Commissioner's final decision. (Doc. No. 1).

## DISCUSSION

Plaintiff contends that the Commissioner's decision is due to be reversed because (1)

the ALJ committed reversible error in failing to evaluate Plaintiff's mental impairment and resulting functional limitations as required by 20 C.F.R. § 404.1520a; (2) the ALJ committed reversible error since the testimony of the vocational expert was that there was no work that Plaintiff could perform; (3) the ALJ erred in failing to obtain an updated medical opinion of a medical expert as to medical equivalency, and "the ALJ erred in not ordering a consultative examination when additional medical evidence was submitted from Keesler Air Force Base, that may change the state agency medical or psychological consultant's finding that the impairment is not equivalent in severity to any impairment in the listings of impairments." (Doc. No. 14, at 5).

## A.  Whether the ALJ Failed to Evaluate Plaintiff's Mental Impairment and Resulting Functional Limitations as Required by 20 C.F.R. § 404.1520a

Under section 1520a, the ALJ first evaluates whether the claimant has a medically determinable mental impairment and, if so, the ALJ then "rate[s] the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)." 20 C.F.R. § 404.1520a(c)(2).  Paragraph (c) lists the following four areas of assessment: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3)-(4). The ALJ rates an impairment in the first three functional areas as none, mild, moderate, marked, or extreme. The ALJ rates the fourth area, episodes of decompensation, as none, one or two, three, or four or more. 20 C.F.R. § 404.1520(c)(4). Impairments rated as none or mild in the first three categories and none in the fourth category are generally considered not to be severe.  20 C.F.R. § 404.1520a (d)(1).

This technique is called the Psychiatric Review Technique Form or "PRTF." *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005).

Except for her statement of the issue, Plaintiff provides no further mention of section 1520a or argument describing the way in which the ALJ failed to satisfy section 1520a. Plaintiff does not divide her brief into sections addressing each of the claimed errors. Instead, the whole of her argument is contained within a two-page portion of the brief under the heading, "Summary of the Argument and Standard of Review." (Doc. No. 14, at 8-10). Thus, if Plaintiff means to argue the ALJ failed to satisfy the technical requirements of section 1520a, the Court deems the issue waived. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *cf. Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.") (collecting cases); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir.1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citing *Cont'l Tech Serv., Inc. v. Rockwell Int'l Corp*, 927 F.2d 1198, 1199 (11th Cir.1991)). Even if this issue were not waived, the ALJ satisfactorily performed the required analysis at R. 13-14.

Plaintiff does maintain that "the ALJ should have found her mental impairments, as

evidenced by her vast medical records from Keesler Air Force Base, as well as SpectraCare, and recent court ordered institutionalization, medically equaled [Listing 12.04], Affective disorders, specifically Bipolar, depression." (Doc. No. 14, at 9).[1]  It is Plaintiff's burden to show that she medically equals Listing 12.04.[2]  *See Barron v. Sullivan*,  924 F.2d 227, 229

_____

[1] Plaintiff cites Listing 112.04, which pertains to children.  The court construes plaintiff's argument to refer to § 12.04, the corresponding listing for adults.

[2]  Under Listing 12.04, a person is disabled if she meets the following criteria:

 A. Medically documented persistence, either continuous or intermittent, of one of the following:
1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

(11th Cir. 1991)("The burden was Barron's to show that his impairments combined to meet or equal a listed impairment[.]").  Again, Plaintiff provides only a conclusory argument as to how her impairments met or medically equaled the criteria for Listing 12.04.

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. See 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *See id.*

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  Plaintiff fails to "meet all of the specified medical criteria" of Listing 12.04; therefore, she does not meet the listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)("An impairment that manifests only some of those

---

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;
OR
C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

criteria, no matter how severely, does not qualify.").

The ALJ considered each of the paragraph B criteria of Listing 12.04 and 12.08, and determined that Plaintiff did not have mental impairments resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  (R. 13-14).  Substantial evidence on the record supports the ALJ's decision.  (R. 13-14).  In activities of daily living ("ADL"), Plaintiff denied any problems with personal care, and she reported that she sometimes prepares meals, performs household chores with encouragement, gets outside using rides, shops, and is able to pay bills, count change, handle a savings account, and use a checkbook.  (R. 13, 182-85).  The ALJ found that Plaintiff had only mild restrictions in ADL, and he pointed out that Plaintiff and her boyfriend/husband stated on the Initial Claimant Contact form "that all physical limitations noted on ADLs are due to seizures of the effects after a seiz[u]re.  Both parties deny any additional physical limitations." (R. 13, 193).  The ALJ determined that Plaintiff had moderate difficulties in social functioning.  (R. 13).  Plaintiff reported difficulty talking, getting along with others, handling stress, and handling changes in routine "if I hurt myself during a seizure and also with bi-polar."  (R. 13, 187).  The ALJ noted that during a May 2, 2012, interview with the Disability Determination Service ("DDS") representative, however, both Plaintiff and her boyfriend/husband said that Plaintiff can carry on a normal conversation, and the disability

specialist "noted no difficulty talking on interview with" Plaintiff.  (R. 13, 193).  The ALJ

determined that Plaintiff had moderate difficulties in concentration, persistence, or pace.  (R.

13).  Plaintiff and her boyfriend/husband reported Plaintiff had difficulty with memory,

completing tasks, concentration, understanding, and following instructions, and she needs

reminders for personal grooming, medication, and appointments.  (R. 13, 176, 178, 187).

The ALJ observed, however, that Plaintiff can manage money.  (R. 13, 185).  The ALJ stated

that Plaintiff had one to two episodes of decompensation of extended duration.  (R. 14).

Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs

accompanied by a loss of adaptive functioning, as manifested by difficulties in performing

activities of daily living, maintaining social relationships, or maintaining concentration,

persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).  Extended episodes

of decompensation "means three episodes within 1 year, or an average of every 4 months,

each lasting for at least 2 weeks."  *Id.*  Plaintiff was admitted to the Behavioral Medicine

Unit ("BMU") at SpectraCare in December 2012, but that stay was only a week and therefore

did not qualify as an "extended" episode.  (R. 13, 1132-64).

   The ALJ also determined that Plaintiff did not satisfy the paragraph C criteria of

Listings 12.04 or 12.08.  (R. 14).  In particular, the ALJ found that "[t]he record does not

contain evidence that [Plaintiff] is unable to function outside a highly supporting living

arrangement."  (R. 14); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). The ALJ's

findings are supported by substantial evidence in the record and, except for her broad

reference to the medical evidence, Plaintiff points to no contrary evidence.  (Doc. No. 14, at 9).

**B.**     **Whether the ALJ Erred by Failing to Obtain an Updated Medical Opinion or Consultative Examination After Receiving Evidence from Keesler Air Force Base**

Plaintiff further argues that, after receiving medical evidence from Keesler Air Force Base, the ALJ erred by "fail[ing] to obtain an updated medical judgment as to medical equivalence per Social Security Ruling 96-6p 'mental limitations: A substantial loss of the ability to perform any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule) will substantially erode the unskilled sedentary occupational base and would justify a finding of disability . . . .'"  (Doc. No. 14, at 9).[3]  Later in her brief, Plaintiff contends that the ALJ must obtain an updated medical opinion "'[w]hen additional medical evidence is received that, in the opinion of the ALJ or the Appeals Council, may change the state agency medical or psychological consultant's finding that the impairment is not equivalent in severity to any impairment in the Listing of Impairments."  (Doc. No. 14, at 10); *see also* 1996 WL 374180, at *4.  Plaintiff argues that the ALJ should have ordered a consultative examination "regarding her seizures as there was no current medical evaluations documenting her seizure activity."  (Doc. No.

---

[3] Plaintiff cites Social Security Ruling 96-6, but the language Plaintiff quotes is actually from Social Security Ruling 96-9, "Policy Interpretation Ruling Titles II and XVI: Determining Capability to do Other Work—Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work," 1996 WL 374185.  Plaintiff's Residual Functional Capacity was not for sedentary work, however, but rather was for the full range of work at exertional levels with nonexertional limits.  (R. 14).

14, at 10).

The ALJ committed no reversible error. Social Security Ruling 96-6 requires in relevant part[4] that the ALJ obtain an updated medical opinion only if the ALJ is of the opinion that the additional medical evidence may change the state agency consultant's finding that the claimant's impairments were not equivalent in severity to a listed impairment. *See Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence,* 1996 WL 374180, at *4. The records from Keesler Air Force Base were from 1983 to 2007, and they ended nearly five years before the March 15, 2012, alleged onset date for Plaintiff's disability. (R. 264-1131). The ALJ considered Plaintiff's medical records from 2011 and 2012, as well as Plaintiff's self-reported functional capacity and the May 2012 opinion of Dr. Samuel D. Williams, the state agency psychiatrist and medical consultant. (R. 13-19, 230-31). As the Court of Appeals has instructed:

> The claimant bears the burden of proving that [s]he is disabled, and, thus, is responsible for producing evidence to support his claim. *Ellison v. Barnhart,*

---

[4] Ruling 96-6 states "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." 1996 WL 374180, at *3. The ruling identifies documents by the state agency consultants that qualify as expert opinion evidence on the issue of equivalence. *Id.* The requirements of SSR 96–6 are satisfied by the PRT opinion of Dr. Samuel D. Williams, the reviewing state agency psychiatrist. *Id.*; R. 227-38.

355 F.3d 1272, 1276 (11th Cir.2003). However, [b]ecause a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981). The ALJ is required to develop the medical history for the twelve months *prior to* the date the application for disability benefits is filed but is not bound to develop the record after that date. *Ellison,* 355 F.3d at 1276; 20 C.F.R. 416.912(d). In determining whether the ALJ has failed to develop the record fully, as [Plaintiff] argues here, we are guided by whether the record reveals evidentiary gaps that result in unfairness or clear prejudice. *See Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir.1995) (holding that there must be a showing of prejudice before we will find a claimant's rights under due process have been violated by a failure to develop the record).

*Larry v. Commissioner of Social Sec.*, 506 F. App'x. 967, 968-69 (11th Cir. Feb. 7, 2013)(emphasis and first and third alterations added).

Here, the ALJ did develop the record for the twelve months *prior to* April 5, 2012, Plaintiff's application date. *Id.*; 20 C.F.R. §§ 404.1512(d), 416.912(d). The medical records during the relevant period begin on November 29, 2011, when Plaintiff was seen at SpectraCare for intake. (R. 16-18, 250-56). Plaintiff "reported that she only had seizures during childhood and her last seizure was in her childhood." (R. 16, 251). Her presenting complaints included panic attacks, crying, anger, and she stated she previously had been diagnosed as bipolar. (R. 250). On November 30, 2011, Dr. Lopez prescribed Plaintiff medication for bipolar disorder, panic disorder, social phobia, and personality disorder. (R. 18, 244-47). Plaintiff was supposed to return for therapy on December 13, 2011, but she failed to appear for her appointment. (R. 242-43). Plaintiff also failed to respond to a no-show letter regarding the December 2011 appointment, and she failed to attend a March 14, 2012, appointment scheduled with Dr. Lopez. (R. 18, 248-49). As a result, SpectraCare

terminated its relationship with Plaintiff in mid-March 2012.  (R. 18, 248-49).

On January 10, 2012, Plaintiff was seen in the emergency room at Southeast Alabama Medical Center for a probable seizure, but she left before triage, stating that she felt better and wanted to leave.  (R. 16, 220-22).  Plaintiff returned to the emergency room on February 2, 2012, for a seizure.  (R. 16, 215).  She reported that the seizure happened at work, was tonic clonic, and lasted about thirty seconds.  The notes indicate that Plaintiff was "near baseline and [Plaintiff] notes that she does not really want an evaluation but is willing to do so. . . ," and she denied associated symptoms.  (R. 16, 216).  Plaintiff was in distress, awake, and confused but answered questions.  (R. 217).  She was given Fosphenytoin by IV but stated, "my back is burning, Stop this medication and I am leaving!" and tried to pull at the IV.  (R. 217).  Plaintiff left angrily in no apparent distress.  (R. 217).  She was diagnosed with subtherapeutic Dilantin levels.  (R. 16, 218-19).  The notes indicate, "Your dilantin level was low and has been replaced; ensure to be taking your medication to decrease your risk of having more frequent seizures."  (R. 218).  Plaintiff was not hospitalized for seizures after the March 15, 2012, onset date.

Along with the relevant medical records before the onset date, the ALJ considered Plaintiff's treatment for anger, nervousness, and anxiety at SpectraCare in November 2012, her no-show for treatments in November and December 2012, her sporadic treatment, as well as her in-patient treatment in December 2012, when she was admitted for a week in the Behavioral Medicine Unit ("BMU").  (R. 18-19, 1132-64, 1166, 1188). Plaintiff was noted

to be noncompliant with her medication before her admission to the BMU.  (R. 18, 1134, 1154).  Even if the May 2012 opinion of Dr. Williams is deemed out of date in the wake of the in-patient treatment at the end of 2012, the one-week treatment in the BMU does not satisfy the two-week requirement for a period of decompensation.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

The ALJ also considered Plaintiff's own reports.  Plaintiff stated in her Seizure Questionnaire that she had seizures in February, March, and April 2012, she could tell when a seizure was coming, and they lasted a couple of minutes.  (R. 16, 190-91).  She testified before the ALJ, however, that she did not know when a seizure was coming, she did not know how long they lasted, and she was having seizures three to four times each week.  (R. 43-44, 54).  She reported in her Seizure Questionnaire that her Dilantin caused her difficulty thinking and tiredness; however, she denied any side effects from medications in her Disability Report. (R. 191, 199). The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her medical symptoms "not entirely credible," and Plaintiff does not specifically dispute that finding.  (R. 16).

The ALJ is not required to order a consultative examination if the record contains sufficient evidence for the ALJ to make an informed decision. *Doughty v. Apfel*, 245 F.3d 1274, 1280-81 (11th Cir. 2001)(before ordering consultative examination the ALJ must give "'full consideration to whether the additional information needed ... is readily available from the records of [the claimant's] medical sources' ...  [and] necessary information is not in the

14

record and cannot be obtained from the claimant's treating medical sources or other medical sources")(citations omitted). Here, the record in Plaintiff's case contained sufficient evidence for the ALJ to make an informed decision, and it does not reveal an evidentiary gap that clearly prejudiced Plaintiff. *See Brown*, 44 F.3d at 935.  Consequently, no further medical opinion was required.

### C. Whether the ALJ Erred Regarding the Vocational Expert's Testimony

Plaintiff argues that the ALJ erroneously disregarded the testimony of Doug Miller, the vocational expert ("VE"), who testified there would be no jobs in the national economy for a person of Plaintiff's age, education, and work background, who had no exertional limitations, but who would have four unscheduled days absent from work each month due to seizures, who was precluded from working at unprotected heights, around dangerous machinery, or operating automotive equipment; was precluded from climbing ropes, ladders, or scaffolding; was precluded from working around or having concentrated exposure of five minutes or more to temperature extremes and humidity; who could have occasional contact with the public and could work in close proximity to coworkers and supervisors, but would need to work independently; who could occasionally adapt to workplace changes; could perform simple, routine, repetitive tasks; and who could maintain attention and concentration for up to two hours at a time.  (R. 47-49).

The ALJ did not rely on the above-mentioned hypothetical from the VE; instead, the ALJ relied on the same hypothetical but without the four unscheduled absences per month

due to seizures.  (R. 14).  Under this hypothetical, the VE gave the opinion that there were significant jobs in the national economy for an individual with such functioning capacity, including cleaner, housekeeper, poultry eviscerator, and production assembler.  (R. 47-48).  The ALJ's determination not to include the work absences was supported by substantial evidence.  After her March 15, 2012, alleged onset date, Plaintiff did not go to the hospital for treatment of seizures,[5] despite Plaintiff's self-report that she was having multiple seizures weekly.  (R. 21).  The record contains no medical evidence of seizures between 2007 and 2012, and there is no medical opinion supporting Plaintiff's claim that she would have four unplanned absences from work per month due to seizures. When Plaintiff presented to SpectraCare in 2011, Plaintiff reported that she had not had seizures since childhood.  (R. 16, 251).  The ALJ determined that Plaintiff's statements regarding the limiting effects of her impairments were "not entirely credible," (R. 16), and Plaintiff does not specifically challenge that credibility finding.  Consequently, the ALJ did not err in relying on the VE's response to the hypothetical that did not include four unplanned absences each month.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the Commissioner's

---

[5]The ALJ also observed Plaintiff was noncompliant with treatment (R. 21) and, although Plaintiff testified regarding her ability to afford treatment at the hearing, Plaintiff does not argue that the ALJ erroneously relied solely on her noncompliance, that Plaintiff's poverty excuses her noncompliance, or that the ALJ failed to find that Plaintiff's ability to work would have been restored if she followed prescribed treatment.  *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," and "poverty excuses noncompliance" when noncompliance is sole ground for denial of benefits).

decision is supported by substantial evidence and a proper application of the law. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the decision of the Commissioner be AFFIRMED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any objections to this Recommendation on or before December 29, 2014.  Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Resolution Trust Co. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson,* 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 15th day of December, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE